UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OPERATIVE PLASTERERS' & CEMENT MASONS' INT'L ASS'N OF THE U.S. & CANADA, AFL-CIO,**<br><br>Petitioner,<br><br>v.<br><br>**PULLMAN SHARED SYS. TECH., INC.,** *et al.*,<br><br>Respondents. | Civil Action No.  12-974 (JEB) |

### MEMORANDUM OPINION

This case arises from a dispute between two rival labor organizations – the Operative Plasterers' & Cement Masons' International Association, AFL-CIO (OPCMIA) and the International Union of Bricklayers and Craftworkers (BAC) – over who should receive the work assignment on a construction project in Indiana from contractor Pullman Shared Systems Technology, Inc. (SST).  In filing this suit, Petitioner OPCMIA seeks to vacate an arbitration award upholding SST's assignment of the work to BAC.  OPCMIA contends that this decision cannot stand because the arbitrator ignored the plain language of the parties' agreement and dispensed his own brand of industrial justice.  Both sides now move for summary judgment.  Under the "extremely deferential" standard of review for such labor decisions, the Court will confirm the award, thereby granting Respondents' Motion and denying Petitioner's.

### I.     Background

The background facts in this case are largely agreed upon.  In the construction industry, there has been general recognition that two unions – BAC and OPCMIA – dominate the trades of

1

plastering and cement-finishing work.  See Pet.'s Mot., Exh. 2 (May 15, 2012, Greenberg Arbitration Award) at 4.  For many years the two unions worked cooperatively, crafting a map that divided up the country on a county-by-county basis so that the jurisdiction of each could be clearly demarcated.  See id.  In 1998, however, this arrangement was abrogated, resulting in a "period of significant and on-going friction as the unions battled to win new work in territory historically reserved to the other" and brought numerous jurisdictional challenges before organized labor's dispute-resolution bodies.  See id. at 4-5.  The dispute here over which union would handle a work assignment to install fireproofing materials on an SST project at a BP Products plant in Whiting, Indiana, is the latest in this ongoing chronicle.  See id. at 2.

Both unions and SST are parties to the National Maintenance Agreement (NMA), a collective bargaining agreement between an employer and labor organizations "for the purpose of construction, maintenance, repair, replacement, renovation and modernization work" performed by that employer.  See Pet.'s Statement of Undisputed Material Facts (SUMF), ¶¶ 4-5.  All parties agree that the NMA sets forth a jurisdictional dispute-resolution process, which requires that such disputes be submitted to an umpire and articulates the standards and criteria the umpire is to use when deciding a jurisdictional dispute.  See id., ¶¶ 6-9.  Pursuant to Article 1, Section 7 of the NMA, the parties sought to resolve this dispute internally; when that was unsuccessful, OPCMIA requested arbitration on May 1, 2012.  See id., ¶¶ 12-14.  A hearing was held on May 10 by Umpire Paul Greenberg in Washington, D.C., and five days later he issued an award confirming SST's assignment of the project to BAC.  See id., ¶¶ 15, 18, 26.

OPCMIA then petitioned this Court to vacate Greenberg's award, naming both BAC and SST as Respondents, and all parties now move for summary judgment regarding the award's enforceability.  See ECF Nos. 1, 11 & 13.

**II.     Analysis**

   A.  Deferential Review

In a recent opinion, curiously omitted from Petitioner's Motion, this Circuit provided a comprehensive discussion of the "extremely deferential standard of review for labor arbitration decisions." Nat'l Postal Mail Handlers Union v. Am. Postal Workers Union, 589 F.3d 437, 439 (D.C. Cir. 2009).  A labor arbitrator's decision "must be upheld so long as it 'draws its essence from the collective bargaining agreement.'  That standard is met . . . if the arbitrator 'premise[d] his award on his construction of the contract.'"  Id. at 441 (quoting United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 & 598 (1960)).

   Courts "are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001).  If an arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority," then a court may not overturn his decision, even if the court is convinced the arbitrator committed "serious error."  Id. (quoting E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000)) (internal quotation marks omitted).  A court may vacate a labor arbitration award "only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice.'"  Id. (quoting Enterprise Wheel, 363 U.S. at 597); see also Allied Pilots Ass'n v. Am. Airlines, Inc., 734 F. Supp. 2d, 90, 96-98 (D.D.C. 2010).

   In sum, as this Circuit noted in Nat'l Postal, the "relevant question under the Supreme Court's precedents is not whether the arbitrator erred – or even seriously erred – in interpreting the contract.  Rather, the question is whether the arbitrator was 'even arguably construing or

applying the contract.'" 589 F.3d at 441 (quoting Garvey, 532 U.S. at 509). Significantly, "[c]ourts do not review the substantive reasonableness of a labor arbitrator's contract interpretation. This extraordinarily deferential standard is essential to preserve the efficiency and finality of the labor arbitration process." See id. (internal citations omitted). This deference ensures that the judiciary does not usurp the function entrusted to the arbitrator. See Garvey, 532 U.S. at 510; see also Allied Pilots Ass'n, 734 F. Supp. 2d at 96-98 (recognizing that policy of settling labor disputes by arbitration would be undermined if courts could disturb merits of awards).

Petitioner acknowledges the substantial deference that the Court must afford the arbitrator's decision, but contends that even under such a standard, the award cannot stand since "[n]arrow review – even extremely narrow review – does not mean 'no review.'" Pet.'s Mot. at 8; see also Pet.'s Opp. at 3 ("a United States District judge wields a gavel, not a rubber stamp"); Verizon Washington, D.C. Inc. v. Commc'ns Workers of America, AFL-CIO, 571 F.3d 1296, 1304 (D.C. Cir. 2009) (Henderson, J., concurring) (noting that while courts apply a "largely 'hands off' standard of review to an arbitral award, that does not mean anything goes") (emphasis in original).

B.  Umpire's Decision

In seeking vacatur here, OPCMIA maintains that the arbitrator was dispensing his own "industrial justice" by disregarding the plain language of the parties' agreement. Pet.'s Mot. at 2. Both sides begin by agreeing that Section 10 of the NMA governs this dispute. This section states:

> In rendering a decision, the Umpire shall determine:
>
> a.  First, whether a previous agreement of record or applicable agreement, including a disclaimer agreement, between the National and International

                Unions to the dispute governs;

    b.    Only if the Umpire finds that a dispute is not covered by an appropriate or applicable agreement of record or agreement between the crafts to the dispute, shall consideration be given to the established trade practice in the industry and prevailing practice in the locality.  Where there is a previous decision of record governing the case, the Umpire shall give equal weight to such decision of record, unless the prevailing practice in the locality in the past ten (10) years favors one craft.  In that case, the Umpire shall base any decision on the prevailing practice in the locality.  Except that if the Umpire finds that a craft has improperly obtained the prevailing practice in the locality through raiding, the undercutting of wages or by the use of vertical agreements, the Umpire shall rely on the decision of record and established trade practice in the industry rather than the prevailing practice in the locality;

    c.    Only if none of the above criteria is found to exist, the Umpire shall then consider that because efficiency, cost or continuity and good management are essential to the well being of the industry, the interests of the consumer or the past practices of the employer shall not be ignored;

    d.    The Umpire shall set forth the basis for their decision and shall explain their findings regarding the applicability of the above criteria.  If lower-ranked criteria are relied upon, the Umpire shall explain why the higher-ranked criteria were not deemed applicable.

NMA at 4-5.

    Petitioner contends that the arbitrator "ignored the ranking of criteria in Section 10, choosing to resolve the dispute over SST's assignment of fireproofing work on his own terms." Pet.'s Mot. at 2.  Since the parties concur that no "previous agreement of record" or "applicable agreement" governs, Section 10(a) does not apply, and the Umpire must look to 10(b).  In doing so, Petitioner complains that Greenberg improperly "decided the dispute based solely on a decision of record issued in 2004, without regard to the parties' evidence of prevailing local practice."  Id.  OPCMIA stresses that the arbitrator's interpretation strayed so far afield from the agreement that it cannot be said that he was applying the contract, even under the "extremely

deferential" standard of review.  See id. at 9 (citing Garvey, 532 U.S. at 509); see also id. at 11-15.

Respondents counter that the arbitrator "rationally interpreted the contract, which by its express terms incorporates industry practice."  Resp.'s Mot. at 2.  BAC and SST note that the arbitrator looked to the appropriate criteria in the NMA, particularly a 2004 decision of record and the "'overwhelming weight' of arbitration decisions in BAC/OPCMIA disputes since 2004, which had given the [2004 decision of record] controlling weight."  Resp.'s Mot. at 4; see also id. at 2-3, 15-31.  Even though the Umpire's decision may not constitute the cleanest or simplest reading of the NMA, the Court believes it is certainly an arguable construction that requires deference.

In his seventeen-page decision, Greenberg provides an extensive description of the background and history of the parties' dispute, an explanation of the language within the parties' agreement setting forth the standard for making jurisdictional awards, and a lengthy discussion of "trade practice, prevailing local practice, and decisions of record," all of which factor into his interpretation of the parties' agreement here.  See Award at 2-17.

His analysis begins with the relevant provision of the NMA, which sets forth the standard for resolving jurisdictional disputes that he must interpret and apply.  See id. at 2-3.  As he notes, the critical language comes in Section 10(b).  Pointing to that language, Greenberg observes that "the crux of this dispute revolves around a decision of record adopted by the [Settlement of Jurisdictional Disputes in the Construction Industry ("the Plan")] in 2004 involving OPCMIA and BAC.  The task before me is to determine (a) whether the 2004 decision of record applies in this NMA dispute, and if so (b) how the decision of record applies in this NMA dispute."  Id. at 4 (emphasis in original).

To resolve these questions, Greenberg begins with what he determines to be a decision of record. This decision was issued by a National Arbitration Panel in 2004 in an attempt to settle the longstanding OPCMIA/BAC dispute. See id. at 5-8. This Panel was convened pursuant to a "special mechanism for addressing repetitive jurisdictional challenges," which assembles three Plan arbitrators to hear and resolve disputes when called upon by the Joint Administrative Committee. Id. at 5. The Panel issued a decision on February 11, 2004 (later clarified on March 11, 2004), which held that "[h]enceforth, all jurisdictional disputes between the BAC and the OPCM that are brought before the Plan shall be resolved in favor of the work assignment of the involved Employer." Id. at 7 (citing 2004 Panel Decision). While this decision was decided pursuant to the Plan, rather than under the NMA, the Plan contains the same decisional standard found in Section 10(b) of the NMA. See id. at 3.

Greenberg's decision goes on to trace the way this 2004 decision was applied in subsequent disputes before other arbitrators. See id. at 8-11. In each of these decisions resolving disputes between OPCMIA and BAC over work assignments, the Panel's "employer preference" approach prevailed:

- United Exterior Improvements (2004 Kelly decision relying on 2004 Panel decision to find that jurisdictional dispute would be resolved by employer preference), see id. at 8-9;

- J.R. Phillips, Inc. (2006 McMahon consolidated decision adopting employer-preference approach; no need to make determination on prevailing practice), see id. at 9;

- RG Constr. Serv., Inc. (2006 Pagan decision stressing that Panel's decision was unreviewable authority), see id. at 9-10;

- J.R. Phillips, Inc. (2009 Kelly decision adopting 2004 Panel decision as "exclusively govern[ing]" and superseding any claim of "prevailing practice in the industry"), see id. at 10; and

- Commodore Const. Corp. (Kelly 2010 decision embracing 2004 Panel decision and noting that "jurisdictional disputes between OPCMIA and BAC shall be based on employer preference, without regard to prevailing local practice").

See id.

Reviewing this "overwhelming weight of Plan jurisprudence" subsequent to the 2004 Panel decision, Greenberg recognized "the primacy of employer preference as the governing criterion for making awards in disputes between BAC and OPCMIA involving plastering or cement finishing tasks, with Plan arbitrators consistently declaring that the normal area practice considerations . . . do not apply to disputes between these two parties." Id. at 11. He further observed that while there is a fairly robust history of the awards under the Plan, "the history of these parties before the NMA appears to be significantly less extensive." Id. at 12. Greenberg did, however, point to an award issued in late 2011 "at the same facility as the instant matter," where the Umpire sustained the contractor's assignment of the fireproofing work to BAC. See id. at 12 (citing J.T. Thorpe & Son, Inc., NMAPC No. AI-197-11 (2011)).

Based on all of the considerations discussed above, Greenberg concluded:

> Looking at the record as a whole, however, I believe BAC has the better argument in this case. I find that, notwithstanding the text of NMA Article I, Section 10(b) suggesting local practice ordinarily prevails over the mandate of a decision of record, the 2004 decision of record applies under the NMA and operates in the same manner under the NMA as under the Plan, *i.e.*, employer preference controls in work assignment disputes between BAC and OPCMIA in connection with plastering and cement finishing tasks.

Id. at 14. He provided additional "observations" to support his conclusions, including:

- the 2004 Plan decision operates differently from other decisions of record due to the "unique origin of the 2004 decision of record, the unique nature of the disputes between the two International Unions, and the body of arbitral decisions interpreting the 2004 decision," id. at 14-15;

- the Joint Administrative Committee "effectively has ratified the body of arbitral law holding that prevailing local practice has no role in resolving work assignment disputes between BAC and OPCMIA," id. at 15; and

- adoption of the same decisional standard in the NMA as was being used under the Plan leads to the conclusion that "NMAPC was seeking to bring greater predictability and consistency to the jurisdictional dispute resolution process in all sectors of the industry, with jurisdictional awards at sites subject to the NMA being made under the same standard as awards at sites subject to the Plan."

Id. at 16.

In addition to its argument about plain language, Petitioner submits that Greenberg's decision ignores evidence that the group that administers the NMA, the National Maintenance Agreement Policy Committee, declined in 2011 to adopt the employer-preference policy set out in the 2004 decision. See Pet.'s Mem. at 7-8. The Court finds that the Umpire properly considered this evidence in ultimately determining that it did not support a conclusion that NMAPC had rejected the employer-preference approach. See Award at 16.

The Court finds that the Umpire's reasoning and conclusions in the Award are "not outside traditional juridical and interpretive bounds: The arbitrator was 'arguably construing or applying the contract.'" Nat'l Postal, 589 F.3d at 443 (quoting Garvey, 532 U.S. at 509). His decision, moreover, does not "manifest an infidelity" to his obligation to "draw[] its essence from the collective bargaining agreement." Enterprise Wheel, 363 U.S. at 597. He has neither "rendered a judgment based on external legal sources, wholly without regard to the terms of the parties' contract," Am. Postal Workers Union, AFL-CIO v. USPS, 789 F.2d 1, 3 (D.C. Cir. 1986), nor made a finding "completely inexplicable and border[ing] on the irrational." Garvey v. Roberts, 203 F.3d 580, 590 (9th Cir. 2000).

On the contrary, Greenberg recognized his duty to interpret Article I, Section 10 of the NMA, and his decision is indeed rooted in this language. See Award at 2-4, 14-16; see also

9

Allied Pilots Ass'n, 734 F. Supp. 2d at 98 (where arbitrator "explained its reasoning in terms of the CBA's language, purpose and history," court found decision "drew its essence from the CBA").  The Court need not agree with the arbitrator's "reasoning or judgment, so long as we find that his award rested on his construction of the CBA."  U.S. Postal Service v. Am. Postal Workers Union, 553 F.3d 686, 695 (D.C. Cir. 2009).

In seeking to vacate the award, Petitioner's argument "reflects a misunderstanding of contract interpretation principles and of the proper role of courts in reviewing labor arbitration decisions."  Nat'l Postal, 589 F. 3d at 443.  Here, as in Nat'l Postal,

> [t]he fact that an arbitrator relies on a substantive background principle of law or an established canon of construction – and does not follow the plain text of a contract – does not automatically mean the arbitrator has gone rogue.  As the Supreme Court has explained, a labor arbitrator is "not confined to the express provisions of the contract," but may also look to other sources – including the "industrial common law" – for help in construing the agreement.  United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-82 (1960).  The Court has further stated that an arbitrator may "look for guidance from many sources," and the award is legitimate if it can be "read as embodying a construction of the agreement itself, perhaps with the arbitrator looking to 'the law' for help in determining the sense of the agreement."  Enterprise Wheel, 363 U.S. at 597-98.  Relying on traditional canons of construction or other settled interpretive principles – and not merely on the plain text of a contract – might be seriously misguided in certain cases, but such reliance cannot be dismissed as the arbitrator's dispensing "his own brand of industrial justice."

Id. at 443; see also Transp.-Commc'n Emp. Union v. Union Pac. R. Co., 385 U.S. 157, 161 (1966) (noting that collective bargaining agreements "call[] into being a new common law – the common law of a particular industry or of a particular plant" and "[i]n order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements.  This is particularly

true when the agreement is resorted to for the purpose of settling a jurisdictional dispute over work assignments.").

Additionally, in Madison Hotel v. Hotel & Rest. Employees, Local 25, AFL-CIO, 144 F.3d 855 (D.C. Cir. 1998) (*en banc*), this Circuit recognized that the "parties' past practice, the 'industrial common law' of the hotel business, [and] the structure of the contract as a whole" "could be properly considered by the arbitrator in interpreting the contract and formulating the award." Id. at 859. The court there sustained the arbitrator's award, finding that he permissibly drew on these sources, as well as the explicit provisions of the contract itself, and thus "purport[ed] to be interpreting the contract in rendering his final decision." Id. (internal quotation marks and citation omitted).

Were the Court reviewing this contract interpretation *de novo*, it may have reached a different outcome, but "the arbitrator was at least 'arguably construing or applying' the Agreement in reaching his decision." Nat'l Postal, 589 F.3d at 444 (quoting Garvey, 532 U.S. at 509); see also Verizon Washington, D.C. Inc., 571 F.3d at 1303 ("'[A]n arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract . . . .'") (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987)); U.S. Postal Serv., 553 F.3d at 689 ("'a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one'") (quoting W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757, 764 (1983)); Hotel

Ass'n of Washington v. Hotel & Rest. Emp. Union, Local 25, AFL-CIO, 963 F.2d 388 (D.C. Cir. 1992) ("Neither a disagreement with the arbitrator's findings of fact nor a difference of opinion about the correct interpretation of the contract is an occasion for judicial intervention."); Allied Pilots Ass'n, 734 F. Supp. 2d at 98 (noting that it is outside of a court's purview to correct the arbitrator's interpretation, "even if that interpretation was badly mistaken") (internal quotation marks and citation omitted).  The Court, therefore, confirms Greenberg's award.[1]

### III.     Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order this day granting Respondents' Motion for Summary Judgment and denying Petitioner's.  The award will be confirmed.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:   December 17, 2012

---

[1] In reaching this decision, the Court does not rely on Exhibits "A" through "N" of the Declaration of Timothy J. Driscoll.  Petitioner's Motion to Strike, ECF No. 16, will thus be denied as moot.